UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MISTER SOFTEE, INC.,

        Plaintiff,

    v.                                                          22-CV-829-LJV
                                                                   DECISION & ORDER
FAYEZ M. ABDALLAH, *et al.*,

        Defendants.

_____

On November 2, 2022, Mister Softee, Inc. ("Mister Softee"), commenced this

action under the Lanham Act and New York common law.[1]  Docket Item 1; *see id.* at

¶ 31.  Mister Softee alleged that the defendants, Fayez M. Abdallah, Najib Ali Alawdi,

and Amna A. Mohamad, were "operat[ing] ice cream trucks using Mister Softee's

trademarks and trade dress without [its] authorization."  *Id.* at ¶ 1.  The defendants were

served in late 2022,[2] *see* Docket Items 8, 9, and 12, and two of them—Abdallah and

---

[1] The complaint alleges that Mohamad's conduct "is . . . a violation of the
common law" without specifying *which* common law.  Docket Item 1 at ¶ 31.  Because
the relevant conduct occurred in New York State, *see generally id.*, the Court assumes
that Mister Softee intends to refer to New York common law.

[2] According to the affidavit of service filed by Mister Softee, Mohamad was
served by "affixing a true copy of the . . . pleading [in this action] to the door of . . . [her]
dwelling place[ or] usual place of abode[] within the state" and by sending a copy of the
pleading by mail to the same address.  Docket Item 12.  Such service was effected after
the process server "was unable with due diligence to find [Mohamad] or a person of
suitable age and discretion" at the dwelling on three occasions.  *Id.*

Because the mode of service attested to in the affidavit is proper under New York
state law, *see* N.Y. C.P.L.R. § 308(4), and because "[a] properly filed [a]ffidavit of
[s]ervice is *prima facie* evidence that service was properly effected," *Arthur F. Williams,
Inc. v. Helbig*, 208 F.R.D. 41, 44 n.8 (E.D.N.Y. 2002), the Court finds that Mohamad
was properly served and that it may exercise personal jurisdiction over her.

Alawdi—settled with Mister Softee, Docket Item 10.  But after the third defendant, Mohamad, failed to appear or defend this action, Mister Softee asked the Clerk of the Court to enter a default against her, Docket Item 13, and on March 27, 2023, the Clerk entered that default, Docket Item 14.

Mister Softee then moved for a default judgment, a permanent injunction, and an award of attorney's fees and costs.  Docket Item 15.  Mohamad did not respond to that motion, *see* Docket Item 16 (setting briefing schedule), nor did she respond to an order to show cause as to why Mister Softee's motion should not be decided on the papers currently before the Court, *see* Docket Item 17.  Her time to respond has expired.  *Id.*

Based on its review of Mister Softee's motion papers and for the reasons that follow, the Court grants in part and denies in part Mister Softee's motion.

## BACKGROUND[3]

Mister Softee is "the franchisor of Mister Softee mobile ice cream truck businesses that sell soft-serve ice cream, hard ice cream, frozen desserts, novelties, stick items[,] and other products."  Docket Item 1 at ¶ 8.  The company owns several trademarks associated with "Mister Softee," including the "Mister Softee [l]ogos," its

---

[3] The following facts are taken from the complaint, Docket Item 1.  On a motion for a default judgment after entry of a default, the court accepts as true the complaint's factual allegations except those relating to damages and "draw[s] all reasonable inferences in [the moving party's] favor."  *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6, 84 (2d Cir. 2009); *Burris v. Chen*, 2021 WL 2661129, at *4 (E.D.N.Y. June 29, 2021) ("[A] defaulting defendant admits all well-pleaded factual allegations apart from those relating to damages[.]").

jingle, and "the overall design of the Mister Softee ice cream truck," and it has "continuously used" those marks for decades—most since 1956.[4]  *Id.* at ¶¶ 10, 12.

The Mister Softee truck has a number of "distinctive . . . characteristics."  *Id.* at ¶ 13.  More specifically, it is "white with a blue trim" and blue wheels, with certain phrases—including "The Very Best" and "Mister Softee"—written in "red cursive print" or "in blue, block capital letters . . . [with] a green, frost-like trim"—in particular places across the truck's front and sides.  *Id.* at ¶ 13(a)-(d).  "[A] distinctive cartoon logo . . . depicting a soft serve ice cream cone with a smiley face and bow tie" is painted on the truck under the "red script words 'Mister Softee.'"  *Id.* at ¶ 13(e).  In addition, the display windows of the truck "contain designed advertisements printed on plastic for [various] specialty products."  *Id.* at ¶ 13(i).  Other aspects of the truck's design are distinctive as well.  *See id.* at ¶ 13(a)-(n).

Mister Softee provides its "franchisees" with "licenses" to "use Mister Softee's trade names, service marks[,] and trademarks and to operate [Mister Softee ice cream trucks]."  *Id.* at ¶ 9; *see also id.* at ¶ 14.  At some point "in the early to mid-2000s," Mister Softee "entered into [an] oral license agreement[]" with Mohamad that afforded her such a license.  *Id.* at ¶ 17.[5]  The agreement "renew[ed] each year" upon Mohamad's payment of "the yearly license fee."  *Id.* at ¶ 18.

---

[4] The complaint states that "[s]ince 1956, Mister Softee and its franchisees have continuously used and advertised Mister Softee's trademarks, trade names, trade dress[,] and the Mister Softee [s]onic [m]ark throughout the country," but then clarifies that the Mister Softee jingle was composed in 1960.  Docket Item 1 at ¶ 12.

[5] There are two paragraphs marked "17" in Mister Softee's complaint; this is the second one.  *See* Docket Item 1.

In February 2021, Mister Softee sent a "[n]otice of [t]ermination" to Mohamad, letting her know that it "did not intend to renew the [l]icense [a]greement[]."  *Id.* at ¶ 19. It "demanded that [Mohamad] cease and desist . . . [her] use [of] Mister Softee's [m]arks before the seasonal ice cream business started up in late March/early April."  *Id.*  In April and May 2022, Mister Softee attempted to resolve the conflict with Mohamad (and the other two defendants initially named in this action) through mediation.  *Id.* at ¶ 20. After those talks broke down, "Mister Softee sent [Mohamad's] counsel a letter demanding" that Mohamad "immediately cease and desist" her use of Mister Softee trademarks, "de-identify [her] ice cream truck[]," and return the "music box . . . programmed to play the Mister Softee [jingle]."[6]  *Id.* at ¶¶ 21-22.  Mohamad's counsel told Mister Softee that she would "de-identify" her ice cream truck and would "reprogram[]" the music box rather than return it.  *Id.* at ¶ 23.

But Mohamad never supplied proof—through counsel of otherwise—that she had taken either of those steps.  *See id.* at ¶ 24.  Instead, as Mister Softee learned sometime in 2022, Mohamad "continued to operate [her] ice cream truck[] using Mister Softee's [m]arks . . . in the Buffalo, New York[,] area."  *Id.* at ¶ 25.  Mister Softee then filed this lawsuit, and Mohamad defaulted as described above.

## LEGAL PRINCIPLES

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  First, the

---

[6] According to the complaint, all defendants named in this action took part in the mediation, and the "counsel" referred to apparently represented all three.  *See* Docket Item 1 at ¶¶ 20-23.  But no counsel has appeared in this lawsuit for Mohamad.

plaintiff must secure a clerk's entry of default by demonstrating "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend" the action. Fed. R. Civ. P. 55(a).  Second, the plaintiff must "seek a judgment by default under Rule 55(b)."  *Green*, 420 F.3d at 104.  "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," a default judgment may be obtained from the clerk; "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

An entry of default does not mean that a default judgment is automatically warranted.  *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam).  A party that has defaulted "is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability," *Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 576 (W.D.N.Y. 2019), and the non-defaulting party is "entitled to all reasonable inferences from the evidence offered," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  But the plaintiff seeking a default judgment "bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action."  *LG Cap. Funding, LLC v. Accelera Innovations, Inc.*, 2018 WL 5456670, at *4 (E.D.N.Y. Aug. 13, 2018).

If a plaintiff establishes the defendant's liability, courts then consider whether equitable factors favor the entry of a default judgment.  *Deep Foods*, 419 F. Supp. 3d at 576-77.  Those factors—which are the "same" ones that courts consider in deciding a "motion to set aside entry of default"—include "(1) whether the defendant's default was

willful; (2) whether the defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for [a] default judgment." *Id.* (citations and internal quotation marks omitted).

If a court finds that entry of a default judgment is legally and equitably appropriate, it turns to the question of the appropriate remedy. "A court may issue an injunction on a motion for [a] default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co.*, 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011) (quoting *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*, 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007)).

"Ultimately, the decision whether to enter [a] default judgment is committed to the district court's discretion." *Deep Foods*, 419 F. Supp. 3d at 577 (alterations and internal quotation marks omitted) (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015)); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for . . . default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."). "In light of the Second Circuit's 'oft-stated preference for resolving disputes on the merits,' default judgments are 'generally disfavored.'" *LG Cap. Funding, LLC*, 2018 WL 5456670, at *4 (quoting *Enron*, 10 F.3d at 95-96); *see also Green*, 420 F.3d at 104 (noting that "a

default judgment is the most severe sanction which the court may apply" (citation and internal quotation marks omitted)).

## **DISCUSSION**

By obtaining the clerk's entry of default against Mohamad, Docket Item 14, Mister Softee has satisfied the first of Rule 55's procedural steps. *See Green*, 420 F.3d at 104; Fed. R. Civ. P. 55(a).  Because the relief Mister Softee seeks—a permanent injunction, attorney's fees, and costs—is not a "sum certain or a sum that can be made certain by computation," it properly asked this Court to enter a default judgement. *See* Fed. R. Civ. P. 55(b).  So the Court first addresses whether Mister Softee's allegations—accepted as true—establish Mohamad's liability.[7] *LG Cap. Funding*, 2018 WL 5456670, at *4.

---

[7] Mister Softee argues that in *Au Bon Pain*, the Second Circuit held that "when a default is entered under Rule 55(a), the court may enter [a] default judgment against the defaulting defendant and for[]go analyzing the plaintiff's claims."  Docket Item 15-1 at 6.  And so it asks that a "default judgment be entered in its favor and against . . . Mohamad without the Court['s] analyzing [Mister Softee's] claims."  *Id.*  It nevertheless provides "a detailed analysis supporting [its] claims" in the event one is required.  *Id.* at 7-12.

The Court declines Mister Softee's request to forgo analysis here.  *Au Bon Pain* specifically noted that while a district court "should . . . accept[] as true all of the factual allegations of the complaint, except those relating to damages," it "*need not* agree that the alleged facts constitute a valid cause of action."  653 F.2d at 65 (emphasis added) (citations omitted).  Instead, as discussed above, courts in this circuit have generally held that "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see also Finkel*, 577 F.3d at 84 (stating that courts are "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law").

## I.    LIABILITY

Mister Softee alleges that Mohamad's operation of her ice cream truck violates the Lanham Act's prohibitions on trademark infringement, 15 U.S.C. § 1114, and false designation of origin, *id.* § 1125.[8]  Docket Item 1 at ¶ 31; Docket Item 15-1 at 7-8. Courts assess "claims for unfair competition and false designation of origin under the Lanham Act" according to "[t]he same standard[]."  *Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413, 430 (S.D.N.Y. 2018); *Deep Foods*, 419 F. Supp. 3d at 578 (noting that "[g]enerally, the same facts that support a claim of trademark infringement will suffice to state a valid claim for false designation of origin" (citation omitted)).  To prevail on those claims, a plaintiff must show that (1) "it has a valid mark that is entitled to protection under the Lanham Act" and that (2) "[the defendant's] actions are likely to cause confusion with [the plaintiff's] mark."  *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996).

For the reasons that follow, Mister Softee has alleged facts sufficient to meet both requirements.

### A.    Validity of Mark

Mister Softee owns registered trademarks for the "Mister Softee" logos, jingle, and truck design and has "continuously used" those marks for decades.  *See* Docket

---

[8] In its complaint, Mister Softee asserted claims against Mohamad for trademark infringement, false designation of origin, and dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as for unfair competition and unfair trade practice under the common law.  Docket Item 1 at ¶ 31.  But in its motion for a default judgment, the company appears to seek relief only on its Lanham Act claims for trademark infringement and false designation of origin.  *See* Docket Item 15-1 at 7-10 (referring to those claims only in arguing that Mister Softee has "shown actual success on the merits").  The Court therefore analyzes Mohamad's liability only under the Lanham Act.

Item 1 at ¶¶ 10, 12.  "[A] registered mark in continuous use for a five-year period is presumptively valid."  *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 534-35 (2d Cir. 2005) (citing 15 U.S.C. § 1065).  Thus, Mister Softee has shown that its marks are "valid mark[s] that [are] entitled to protection under the Lanham Act." *Sports Auth.*, 89 F.3d at 960; *see Deep Foods*, 419 F. Supp. 3d at 579 (finding that plaintiff had satisfied the first prong based on showing that it had a registered mark in continuous use for more than five years).

### B.    Likelihood of Confusion

To determine whether a mark is likely to cause confusion among consumers, courts in this circuit generally rely upon the eight-factor test first applied by Judge Henry Friendly in *Polaroid Corporation v. Polarad Electronics Corporation*, 287 F.2d 492 (2d Cir. 1961).  *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005). That test considers "(1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the parties' areas of commerce, (4) the likelihood that the plaintiff will bridge the gap separating their areas of activity, (5) actual consumer confusion, (6) whether the defendant acted in bad faith or was otherwise reprehensible in adopting the mark, (7) the quality of the defendant's product, and (8) the sophistication of the relevant consumer group."  *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 235 (S.D.N.Y. 2022) (citing *Polaroid Corp.*, 287 F.2d at 495). Based on those considerations, this Court finds that Mister Softee has shown that Mohamad's actions are likely to cause confusion.[9]

---

[9] In this case, examination of the *Polaroid* factors may not be strictly necessary because Mister Softee alleges that Mohamad, a former franchisee, has continued to "operat[e] [her] mobile ice cream truck[] using the Mister Softee [m]arks, despite [her]

The first factor—strength of the plaintiff's mark—"depends ultimately on [the mark's] distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d Cir. 2022) (citation omitted).  A trademark may have "inherent distinctiveness," "acquired distinctiveness," or both. *Souza*, 68 F.4th at 110-11.  A registered, incontestable mark—that is, a mark that has been registered for more than five years, *see Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016)—is "presumptively distinctive," *Deep Foods*, 419 F. Supp. 3d at 579-80.

In this case, the marks at issue—including the Mister Softee logos, jingle, and truck design—are registered and incontestable and have been used "continuously . . . throughout the country" since as far back as 1956.  Docket Item 1 at ¶ 12.  Mister

---

knowledge that [she] ha[s] no legal right to do so."  Docket Item 1 at ¶ 27; *see also id.* at ¶¶ 17-26.  "[W]hen an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law."  *Microban Prods. Co. v. API Indus., Inc.*, 2014 WL 1856471, at *6 (S.D.N.Y. May 8, 2014) (collecting cases); *see Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 399 (S.D.N.Y. 2000) ("[I]n the case of an ex-licensee, the marks are identical and confusion is almost inevitable."); *Lee Myles Auto Grp., LLC v. Fiorillo*, 2010 WL 3466687, at *4 (S.D.N.Y. Aug. 25, 2010) (likelihood of confusion established with respect to defendants who were "former franchisees" of the plaintiff and were "using the [plaintiff's] actual . . . [m]arks without permission").

Several courts have noted that a defendant's status as an ex-licensee made analysis of the *Polaroid* factors "largely superfluous" but have nonetheless analyzed those factors.  *See Lee Myles*, 2010 WL 3466687, at *4-6; *see also Microban*, 2014 WL 1856471, at *6-8.  Further, the Second Circuit has recently held that in trademark cases—albeit not specifically in cases involving former licensees—"it is incumbent upon the district judge to engage in a deliberate review of each [*Polaroid*] factor, and, if a factor is inapplicable to a case, to explain why."  *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 115 (2d Cir. 2023) (citation and internal quotation marks omitted).  And Mister Softee itself has argued that it established a "likelihood of confusion" based on the *Polaroid* factors—rather than on the basis of Mohamad's status as an ex-licensee.  *See* Docket Item 15-1 at 8-10.  For all those reasons, the Court analyzes likelihood of confusion based on the *Polaroid* factors.

Softee's complaint details the "inherently distinctive . . . appearance" and "design" of its trucks, *see id.* at ¶ 13 (describing various elements of Mister Softee trucks' design), which are "widely known and recognized by consumers," *id.* at ¶¶ 12, 15. Thus, the Court finds that Mister Softee's marks have both "inherent" and "acquired" distinctiveness, so that the first *Polaroid* factor weighs in favor of finding a likelihood of confusion. *See Souza*, 68 F.4th at 111; *see also Mister Softee, Inc. v. Diaz*, 2020 WL 5665240, at *5 (E.D.N.Y. July 2, 2020) (finding Mister Softee marks strong for purposes of *Polaroid* analysis), *report and recommendation adopted*, 2020 WL 5658722 (E.D.N.Y. Sept. 22, 2020).

The second *Polaroid* factor—similarity—also weighs in favor of finding a likelihood of confusion. As already noted, because Mohamad has continued to operate a Mister Softee truck as if she were still a franchisee, Docket Item 1 at ¶¶ 19-27, the marks are not just similar but essentially the same, *see Century 21 Real Est. LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 282 (E.D.N.Y. 2009) (finding marks at issue to be "identical" when "the defendants . . . failed to stop using the [plaintiff's m]arks despite the termination of their franchise").

On related grounds, the third *Polaroid* factor—the parties' competitive proximity—weighs at least slightly in favor of finding a likelihood of confusion. Both Mister Softee and Mohamad operate mobile ice cream trucks. Docket Item 1 at ¶¶ 8-9, 25-27. And while Mister Softee does not clearly explain the extent of its past or current operation specifically in the Buffalo, New York, area, *see id.* at ¶12 (stating that "Mister Softee and its franchisees have continuously used and advertised Mister Softee's trademarks . . . throughout the country"), it seems that Mohamad previously operated her ice cream

11

truck in that region as a franchisee and has continued to do, *see id.* at ¶ 25 (stating that Mohamad "ha[s] continued to operate [her] ice cream truck[] . . . in the Buffalo . . . area").[10]  In addition, Mister Softee says that as a result of Mohamad's operation of the infringing truck, "Mister Softee will have difficulty franchising [Mohamad's] trading area[]."  *Id.* at ¶ 33.  So the third factor weighs in Mister Softee's favor.[11]

The fifth *Polaroid* factor is actual consumer confusion.  Although Mister Softee does not allege any instances of such confusion, *see generally* Docket Item 1, "because [Mohamad is] using [Mister Softee's] marks in the same or substantially the same product market, actual confusion is a virtual certainty," *see Lee Myles*, 2010 WL 3466687, at *5 (finding that under those circumstances, fifth factor weighed in favor of likelihood of confusion notwithstanding failure of plaintiff to produce any evidence of actual confusion).  So the fifth factor weighs in favor of Mister Softee as well.

The sixth factor—the defendant's bad faith—clearly weighs in Mister Softee's favor.  "Bad faith requires showing the defendant had knowledge—be it actual or

---

[10] In its motion for a default judgment, Mister Softee clarifies that "[b]oth [Mister Softee and Mohamad] operate mobile soft ice cream businesses in and around Buffalo, New York."  Docket Item 15-1 at 10 (citing Docket Item 1 at ¶ 25).  "[T]h[at] statement is not in the [c]omplaint and does not enjoy the presumption of truth."  *See Diaz*, 2020 WL 5665240, at *6.  But the Court nonetheless "accepts the inference" from the complaint that the parties are in some degree of competitive proximity.  *See id.*

[11] In light of the Court's finding of proximity, it need not address the fourth *Polaroid* factor: whether Mister Softee is likely to "bridge the gap" between its market and Mohamad's. *See Jackpocket,* 645 F. Supp. 3d at 235.  Because the parties "already operate in the same marketplace[,] . . . there is no gap for [Mister Softee] to bridge."  *Diaz*, 2020 WL 5665240, at *5; *Star Indus.*, 412 F.3d at 387 (holding that because the parties' products were "already in competitive proximity, there [wa]s really no gap to bridge, and th[at] factor [wa]s irrelevant to the *Polaroid* analysis ").

constructive—of the plaintiff's prior similar mark." *Deep Foods*, 419 F. Supp. 3d at 582 (citation and internal quotation marks omitted).  Mohamad's continued operation of a Mister Softee ice cream truck despite the termination of her agreement with Mister Softee, Docket Item 1 at ¶¶ 25-27, supports finding in favor of Mister Softee on this factor, *see Lee Myles*, 2010 WL 3466687, at *5.  And Mohamad's default is further evidence of her bad faith.  *See Deep Foods*, 419 F. Supp. 3d at 582 (defendants' default treated as evidence of their bad faith).

The seventh *Polaroid* factor—"the quality of the defendant's product"—is neutral: Mister Softee has not provided any facts showing that Mohamad is offering a product of "inferior quality."[12]  *Jackpocket*, 645 F. Supp. at 235, 271-72 (finding that seventh factor did not weigh in favor of or against finding likelihood of confusion when plaintiff did not offer any evidence on that issue).  But the eighth factor—sophistication of the customer—weighs in favor of finding a likelihood of confusion.  Mister Softee's "customer base" is "predominantly" made up of "young children," Docket Item 1 at ¶ 17,[13] who are unlikely—to say the least—to be attuned to the subtleties of the Lanham Act while licking their ice cream cones, *see Mister Softee, Inc. v. Tsirkos*, 2014 WL 2535114, at *5 (S.D.N.Y. June 5, 2014) (noting that "children . . . are relatively unsophisticated consumers").

---

[12] While Mister Softee states that it has "no ability to ensure that [Mohamad is] storing and dispensing [her] ice cream products" correctly, it does not allege that she is in fact operating her truck in an unsafe or substandard manner.  *See* Docket Item 1 at ¶ 34; *see generally id.*

[13] This is the first paragraph marked "17" in Mister Softee's complaint.  *See* Docket Item 1; *see supra* at 3 n.5.

For all those reasons, Mister Softee has shown a likelihood of confusion. *See Polaroid Corp.*, 287 F.2d at 495. Therefore, accepting the undisputed facts in the complaint as true, the Court finds that Mister Softee has plausibly established Mohamad's liability for trademark infringement and for false designation of origin under the Lanham Act. *See* 15 U.S.C. §§ 1114 and 1125.

## II.   EQUITABLE CONSIDERATIONS

Because Mister Softee has established Mohamad's liability, the Court next considers whether equitable factors—that is, whether Mohamad's default was "willful"; whether she has any "meritorious defense[s]"; and to what degree Mister Softee would be "prejudice[d]" by this Court's denial of its motion—weigh in favor of granting a default judgment. *Deep Foods*, 419 F. Supp. 3d at 576-77.

Those equities weigh in favor of granting a default judgment. First, Mohamad's default was willful. She failed to appear or respond despite being served with the complaint, *see* Docket Item 12, as well as with the motion for a default judgment, *see* Docket Item 15 at 3 (certificate of service of motion on Mohamad); Docket Item 16 (setting briefing schedule on that motion), even after this Court gave her even one more opportunity to do so, *see* Docket Item 17 (order to show cause).[14] Second, not awarding a default judgment certainly would prejudice Mister Softee. *See* Docket Item 15-1 at 10-11 (arguing that Mister Softee will suffer "irreparable harm" if a default

---

[14] The Court mailed both of those orders to Mohamad at the address at which she was served, *see* Docket Items 16 and 17. Because neither was returned as undeliverable, they are presumed to have been delivered. *See Hoffenberg v. Comm'r*, 905 F.2d 665, 666 (2d Cir. 1990) ("A properly addressed piece of mail placed in the care of the Postal Service is presumed to have been delivered.").

judgment and an injunction are not entered in its favor); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (finding that plaintiffs who had adequately alleged defendant's liability under the Lanham Act would be prejudiced by denial of default judgment because "[they] would be unable to recover for th[os]e claims"). And for the reasons stated above, *see supra* at 8-14, there appear to be no meritorious defenses to Mister Softee's claims—at least on the face of the complaint. The Court therefore finds that a default judgment should be entered in Mister Softee's favor and turns to the issue of the appropriate remedy.

## III.     REMEDY

Mister Softee moves this Court to enter a permanent injunction barring Mohamad from "continuing to infringe upon the federally protected Mister Softee [m]arks." Docket Item 15; Docket Item 15-1 at 7-11. It also asks the Court to award attorney's fees and costs. Docket Item 15; Docket Item 15-1 at 11-12. For the reasons that follow, the Court grants Mister Softee an injunction and costs but denies the request for attorney's fees.

### A.     Injunctive Relief

To obtain an injunction, Mister Softee must show that "(1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope*, 809 F. Supp. 2d at 41 (citations omitted). Those "prerequisites," *id.*, are four-fold, *see S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 296 (2d Cir. 2014). More specifically, "a plaintiff seeking a permanent injunction" must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Mister Softee has established Mohamad's liability under the Lanham Act. *See supra* at 8-14. That statute vests courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). A court therefore has the power to enjoin a defendant from engaging in further acts of trademark infringement and false designation of origin. *See, e.g.*, *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 151. 159-60 (E.D.N.Y. 2010). So Mister Softee is entitled to an injunction under the Lanham Act if the equitable considerations—that is, the four *eBay* factors cited above—weigh in favor of that remedy.

Mister Softee argues that they do, *see* Docket Item 15-1 at 7-11, and this Court agrees. To begin, "[i]n trademark disputes, a showing of likelihood of confusion establishes . . . irreparable harm." *Malletier*, 426 F.3d at 537 (citation and internal quotation marks omitted). Because Mister Softee has established a likelihood of confusion here, *see supra* at 9-14, it also has shown that it has suffered irreparable injury. Moreover, because Mohamad has defaulted and has given no indication that she will not operate her infringing truck in the future, Mister Softee has no adequate remedy at law. *See Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010) ("The second *eBay* factor—'no adequate remedy at law'—is satisfied where the record contains no assurance against defendant's continued

violation of plaintiffs' trade dress."); *Diaz*, 2020 WL 5665240, at *8 (finding that plaintiff had shown inadequacy of remedies at law because the defendant's "default[] [gave] rise to the inference that she will continue to infringe on the [plaintiff's] trademarks").

The "balance of hardships" also weighs in Mister Softee's favor.  Absent an injunction, the company may continue to suffer harm from Mohamad's infringement. *See* Docket Item 1 at ¶¶ 31-36; *Montblac-Simplo*, 692 F. Supp. 2d at 259 (holding that "defendant's default tips the balance of hardships squarely toward plaintiffs, who stand to lose goodwill and sales should the now absentee defendant . . . endeavor to violate plaintiff's trade dress protections in the future" (alterations, citation and internal quotation marks omitted)).  On the other hand, "the proposed injunction will not harm [Mohamad because], other than barring her from using the Mister Softee trademarks,"— something she is not entitled to do—"it will not otherwise limit her ability to operate her business."  *See Diaz*, 2020 WL 5665240, at *8.

Finally, the Court considers the public interest.  Mister Softee argues that "[t]he injunction [it] seeks is certainly in the public interest because it will protect parents, children, and others from being confused as to the source of the ice cream products they are purchasing."  Docket Item 15-1 at 11.  Without opining specifically on the public interest in mitigating cone-related confoundment, the Court notes that "[t]he trademark laws are intended, in part, to protect the public from confusion, and clearly[] it is in the public interest to avoid deceit and confusion in consumer transactions."  *Sola Franchise Corp.*, 2015 WL 1299259, at *18 (alterations, citation, and internal quotation marks omitted).  For that reason, enjoining Mohamad from operating her infringing truck is in the public interest.

Accordingly, the Court finds that Mister Softee is entitled to a permanent injunction prohibiting Mohamad from further infringing its trademarks.

### B.    Attorney's Fees and Costs

Mister Softee also moves for an award of attorney's fees and costs.  Docket Item 15.  The company does not ask for any specific amount but says that it will request an amount "via a verified Bill of Costs within [thirty] days of this Court's" decision on this motion.  *Id.*

### 1.    Attorney's Fees

The Lanham Act allows courts to "award reasonable attorney fees to the prevailing party" in "exceptional cases."  15 U.S.C. § 1117(a).  Until recently, a court's "finding of willfulness" in cases under the Lanham Act "determine[d] the right to attorney's fees."  *See 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019) (alterations and citation omitted).  That is, any case in which the defendant's violation was deemed "willful" was treated as "exceptional" for the purposes of 15 U.S.C. § 1117.  *See, e.g.*, *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 268 (2d Cir. 2011) (explaining that an "exceptional" case under section 1117 was one that "involve[d] fraud, bad faith, or willful infringement").

But in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), the Supreme Court reached a different conclusion when it considered the meaning of "exceptional case" under a similar provision for attorney's fees in the Patent Act, 35 U.S.C. § 285.  The Court held that to be "exceptional," a case must "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which

the case was litigated." *Octane Fitness*, 572 U.S. at 554.  And in *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018), the Second Circuit held that *Octane Fitness* "applies to the Lanham Act's attorney's fees provision," *id.* at 530.  That court later explicitly clarified that "cases involving willful infringement" are not "necessarily 'exceptional'" for the purpose of determining entitlement to attorney's fees under the same provision.  *4 Pillar Dynasty*, 933 F.3d at 216.  In light of that precedent, courts in this circuit have since found that the mere fact that a defendant has defaulted is not enough to make the case "exceptional" under section 1117.  *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, 2023 WL 2815623, at *7 (E.D.N.Y. Mar. 14, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 2674376 (E.D.N.Y. Mar. 29, 2023).

Mister Softee argues this case is exceptional because Mohamad's "use of Mister Softee's trademarks . . . was both knowing and willful" and because she defaulted as well.  Docket Item 15-1 at 12.  Mister Softee adds that "[t]his is especially true" because Mohamad was a former licensee and was well aware that Mister Softee had not authorized her continued use of its trademarks following the termination of her license.  *Id.*  And it further asserts that "her failure to respond" in this action or to its previous "attempts to resolve the situation . . . has caused [Mister Softee] to incur substantially more in attorney's fees and costs than would have been necessary if Mohamad had simply responded to any of [its] attempts to communicate."  *Id.*

The Court finds that is not enough to make this case "exceptional" under *Octane Fitness* and *Sleepy's*.  Notably, the cases that Mister Softee cites to the contrary predate those decisions.  Docket Item 15-1 at 11-12.  Further, all the circumstances that

Mister Softee says make this case "exceptional," *id.* at 12, would be present in *any* case involving willful infringement and a defaulting defendant.  And that is no longer enough.  *See Am. Infertility of N.Y., P.C. v. Deep Blue Health N.Z. Ltd.*, 2019 WL 10786023, at *8 (S.D.N.Y. Dec. 30, 2019) (denying attorney's fees where plaintiff's motion for fees was "based primarily on the fact that [defendant had] defaulted"), *report and recommendation adopted*, 2020 WL 4218261 (S.D.N.Y. July 23, 2020).

### 2.    Costs

While courts may award attorney's fees under the Lanham Act only in "exceptional" cases, *see* 15 U.S.C. § 1117(a), no such showing is required to award costs, *see id.*; *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 470 (S.D.N.Y. 2017) ("[A] case need not be extraordinary for a prevailing party to recover the costs of [an] action [under section 1117]." (citation and internal quotation marks omitted)).  In fact, "[c]ourts typically award costs"—which "generally consist of filing and service fees, research fees, clerical costs, and related expenses"—"to the prevailing party . . . in Lanham Act cases."  *Streamlight, Inc. v. Gindi*, 2019 WL 6733022, at *20 (E.D.N.Y. Oct. 1, 2019), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *see John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 647 (S.D.N.Y. 2018).  Therefore, and because this Court has found Mister Softee entitled to a default judgment on its Lanham Act claims, the Court further holds that Mister Softee is entitled to recover its costs.

In sum, Mister Softee's motion is denied with respect to attorney's fees but granted with respect to costs.

## **CONCLUSION**

For the reasons stated above, Mister Softee's motion for a default judgment is GRANTED IN PART AND DENIED IN PART.  The Court GRANTS the motion to the extent it requests an injunction, and Mohamad is permanently enjoined from using the Mister Softee registered trademarks or any trademark, service mark, logo, or trade name that is confusingly similar to any of those marks; otherwise infringing upon Mister Softee's registered trademarks or using any similar designation, alone or in combination with any other components; causing a likelihood of confusion or misunderstanding that Mister Softee is the source or sponsor of Mohamad's businesses, goods, or services; or causing a likelihood of confusion or misunderstanding as to her affiliation, connection or association with Mister Softee and its franchisees and/or licensees or any of their goods and services.

The Court DENIES the motion insofar as it seeks an award of attorney's fees but GRANTS it insofar as it seeks an award of costs.  Mister Softee shall submit a verified bill of costs within 30 days of the date of this order.

Once Mister Softee has done so and the Court enters an award of costs, the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 30, 2024
         Buffalo, New York

                            */s/ Lawrence J. Vilardo*
                            LAWRENCE J. VILARDO
                            UNITED STATES DISTRICT JUDGE